UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JERRY J. FOWLER AND MICHELE FOWLER, <br><br> PLAINTIFFS, <br><br> VS. <br><br> WERNER CO. D/B/A NEW WERNER CO., A DELAWARE CORPORATION, NEW WERNER HOLDING CO. (DE), INC. F/K/A NEW WERNER HOLDING CO. (DE), LLC D/B/A WERNER HOLDING CO., A DELAWARE CORPORATION, LOWE'S COMPANIES, INC., A NORTH CAROLINA CORPORATION, AND LOWE'S HOME CENTERS, INC., A NORTH CAROLINA CORPORATION, <br><br> DEFENDANTS. | CAUSE NO. 1:13-CV-126-RLM-RBC |

OPINION and ORDER

This matter is before the court on a summary judgment motion filed by defendants Werner Co. d/b/a New Werner Co., and New Werner Holding Co. (DE), Inc. f/k/a New Werner Holding Co. (DE), LLC d/b/a Werner Holding Co. The Werner defendants argue there is no genuine issue of material fact as to the claims asserted by plaintiffs Jerry Fowler and Michele Fowler. The Fowlers oppose the motion. Argument was heard on August 21, 2014.

I. BACKGROUND

In July 2007, the Fowlers purchased a Type III six-foot aluminum Werner step ladder from a Lowe's store in Fort Wayne. On April 29, 2011, Mr. Fowler used the ladder for a painting project. During the course of the project, he claims the ladder's spreader or spreader arm broke, causing him to fall onto the ladder and the ground. As a result of the fall, Mr. Fowler sustained broken ribs, a lacerated spleen, damaged kidneys, and damaged vertebrae.

Werner Co. had designed and manufactured the ladder in 2001. In 2006, Werner Co. and three other companies[1] filed for Chapter 11 bankruptcy relief in the United States Bankruptcy Court for the District of Delaware. New Werner Holding Co. (DE), LLC[2] d/b/a Werner Holding Co., purchased the assets of the bankrupt entities for cash, a credit bid, and assumption of liabilities as limited and defined in the parties' Asset Purchase Agreement. Before the bankruptcy court approved the sale, Lowe's Companies, Inc. objected to the agreement's "Assumed Liabilities" provision and requested confirmation that the purchaser would be liable for "all of Lowe's product liability and indemnity claims." *Limited Objection and Reservation of Rights by Lowe's Companies, Inc., together with its subsidiaries to Notice of Debtors' Intent to Assume and Assign Certain Leases and Executory Contracts and Fixing Cure*

---

[1] The three other companies were Werner Holding Co. (PA), Inc., Werner Holding Co. (DE), Inc., and WIP Technologies, Inc.

[2] In 2007, New Werner Holding Co. (DE), LLC became defendant New Werner Holding Co., Inc. Defendant Werner Co. is the operating company of New Werner Holding Co., Inc. Correspondingly, New Werner Holding Co., Inc. owns all the stock of Werner Co.

*Amounts*, at 3 <u>In re Werner Holding Co. (DE), Inc.</u>, No. 06-10578 (KJC) (Bankr. D. Del. Apr. 25, 2007) (Doc. No. 44-11). The debtors later told the bankruptcy court the dispute was resolved and the proposed form of order altered accordingly. On April 25, 2007, the bankruptcy court approved the sale, *Order: (1) Approving Sale of Substantially All of Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances; (2) Authorizing and Approving the Purchase Agreement[;] (3) Approving Assumption and Assignment and Sale of Certain Contracts and Leases; (4) Authorizing the Exemption of the Sale from Stamp and Similar Taxes; and (5) Granting Related Relief* <u>In re Werner Holding Co. (DE), Inc.</u>, No. 06-10578 (KJC) (Bankr. D. Del. Apr. 25, 2007) (Doc. No. 35-4), and the related Asset Purchase Agreement, dated March 20, 2007 (Doc. No. 35-5), between the debtors and Werner Holding Co. (DE), Inc. The parties contend that different sections of the bankruptcy court's order — that point to the Asset Purchase Agreement and agreements between the Lowe's Companies and the Werner defendants — determine the Werner defendants' liability. The pertinent sections of the documents are reproduced as needed in the discussion that follows.

The Fowlers allege that the Werner defendants are liable for their injuries contractually, pursuant to the Indiana Product Liability Act, and under common law theories of negligence, gross negligence, and/or recklessness. The Fowlers also assert a claim under the Indiana Consumer Protection Act. The Werner defendants seek summary judgment and contend they aren't liable

because they didn't expressly assume the liabilities of the company which manufactured the ladder and didn't design, manufacture, or market the ladder.

## II. STANDARD OF REVIEW

A movant is entitled to summary judgment if no genuine dispute as to any material fact exists and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The court must construe all facts in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The movant initially has the burden to show there is a lack of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If, based on the evidence of record, a reasonable factfinder could return a verdict for the nonmoving party, summary judgment must be denied. Kodish v. Oakbrook Terrace Fire Prot. Dist., 604 F.3d 490, 507 (7th Cir. 2010).

## III. DISCUSSION
### A. Contractual Liability

The Werner defendants first argue they didn't contractually assume the liabilities of the company that manufactured the ladder in 2001 when they purchased the assets of the bankrupt company six years later. They point to the provision in the bankruptcy court's order regarding the general assumption of liabilities created by the sale.

> Except as expressly provided in the Purchase Agreement or the Ancillary Documents, Buyer is not assuming nor shall it or any

> affiliate of Buyer be in any way liable or responsible, as a successor or otherwise, for any liabilities, debts, or obligations of the Debtors in any way whatsoever relating to or arising from the Debtors' ownership or use of the Purchased Assets prior to the consummation of the transactions contemplated by the Purchase Agreement or the Ancillary Documents, or any liabilities calculable by reference to the Debtors or their operations or the Purchased Assets, or relating to continuing or other conditions existing on or prior to the Closing Date, which liabilities, debts, and obligations are hereby extinguished insofar as they may give rise to liability, successor or otherwise, against Buyer or any affiliate of the Buyer.

*Bankruptcy Court Order Approving Sale*, at ¶ 9. The Werner defendants conclude that based on the bankruptcy court's order, they can't be held liable as a matter of law. Such a blanket statement overlooks the exception to the general rule found in the first sentence of the provision — "Except as expressly provided in the [Asset] Purchase Agreement or the Ancillary Documents." Section 2.3 of the Asset Purchase Agreement contains the expressly assumed liabilities of the purchaser, and subsection (d) specifically addresses customer product liability. The purchaser assumed

> [a]ll Liabilities of any Seller in respect of the product liability claims of the customers of Sellers listed on Schedule 2.3(d) . . . that exist as of immediately prior to the Closing; provided, however, Buyer will assume any Liability of Sellers to any customer of any Seller that is not listed on Schedule 2.3(d) (which would otherwise have been assumed by Buyer had such customer been listed on Schedule 2.3(d)), but only to the extent that such Liability is or becomes an allowed administrative expense claim of Sellers' estates pursuant to Section 503(b) of the Bankruptcy Code.

Asset Purchase Agreement, at 16-17. The assumed liabilities fall within two categories: (1) product liability claims that existed prior to the sale for customers of Sellers listed on Schedule 2.3(d); and (2) allowed administrative

expense claims for customers of Sellers not listed on Schedule 2.3(d). Schedule 2.3(d), titled <u>Assumed Customer Product Liability Claims</u>, states, in its entirety:

> All of Seller's customers with the exception of:
>
> Home Depot
> Kawan Lama
> MAB Paints
> Sears

(Doc. No. 35-4, at 31). Lowe's was a customer, as the objection to this provision during the bankruptcy proceedings showed, and so included in the assumed product liability claims that existed prior to the sale closing. The Werner defendants argue, and the court agrees, however, that the Fowlers' claim didn't exist before the 2007 bankruptcy sale because the fall occurred years later, in 2011. Under the general sections of the bankruptcy court's order and the Asset Purchase Agreement, the Werner defendants didn't contractually assume liability for the Fowlers' claim.

The Fowlers respond that the Werner defendants expressly assumed liability for ladders sold at Lowe's stores and that liability stems from two different provisions in the bankruptcy court's order. First, the Fowlers refer to Section 2.3 of the Asset Purchase Agreement (approved by the bankruptcy court's order) that contains the expressly assumed liabilities of the purchaser. Pursuant to subsection (a), the purchaser assumed "[a]ll Liabilities of any Seller under the Seller Agreements . . . ." In Section 2.1(e), "Seller Agreements" are defined to be all contracts listed or described in Schedule 2.1(e), which includes "open, existing or on-going agreements and/or purchase orders with

Sellers' service providers, vendors or customers." (Doc. No. 44-10, at 6). The Fowlers contend the Lowe's contracts with the bankrupt entities were open, existing or on-going agreements and the Werner defendants consequently assumed all liabilities related to ladders sold through Lowe's stores under the then existing Lowe's agreements.

Second, the Fowlers refer to a provision of the bankruptcy court's order they say resulted from an objection filed by Lowe's Companies, Inc. to the debtors' notice of intent to assume and assign certain leases and contracts in the sale. The objection referenced "a number of ongoing obligations from the Debtors to Lowe's under the Lowe's Contracts, including, without limitation, (i) Lowe's right of indemnification for product liability and other claims involving Debtors' products and (ii) customer product claims arising from Lowe's performance under the Lowe's Contracts" and sought confirmation that the purchaser/assignee would "honor any and all of the Debtors' obligations to indemnify Lowe's for Indemnity Claims, whether such claims involve accidents or conduct occurring before or after the Petition Date and whether such claims are allowed administrative claims or not." *Lowe's Obj.*, at ¶¶ 4, 5(b). At a hearing, counsel for the debtors told the bankruptcy court the objection was resolved and changes were made to the proposed form of order accordingly. *Transcript of Apr. 25, 2007 Hearing*, at 10 <u>In re Werner Holding Co. (DE), Inc.</u>, No. 06-10578 (KJC) (Bankr. D. Del. Apr. 25, 2007) (Doc. No. 44-12). The bankruptcy court approved the sale the next day, and the Fowlers claim the

following provision of the bankruptcy court's order regarding the relationship between Lowe's and the Werner defendants was the result of those negotiations:

> Notwithstanding [the assumed liabilities clause of the purchase agreement], the Debtors are hereby authorized, effective only as of the Closing and in accordance with [sections of the bankruptcy code], to: (a) assume all (but not less than all) Lowe's Agreements; (b) sell, assign, and transfer to Buyer all (but not less than all) Lowe's Agreements in each case free and clear of all Encumbrances (except as provided in this decretal paragraph); and (c) execute and deliver to Buyer, such assignment documents as may be necessary to sell, assign and transfer all (but not less than all) Lowe's Agreements. For the avoidance of doubt, upon the assignment of the Lowe's Agreements to the Buyer, the Buyer will be required to perform all obligations under the Lowe's Agreements, including, but not limited to, the provision of any customer programs or indemnity obligations, if such obligations are set forth in or arise out of the Lowe's Agreements.

*Bankruptcy Court Order Approving Sale*, at ¶ 15. The Fowlers claim the "Lowe's Master Standard Buying Agreement" dated February 19, 1996 (Doc. No. 47-2) is a "Lowe's Agreement," and as such, pursuant to paragraph 15, the purchaser must perform all obligations under the contract. Further, they argue that agreement contains a "Hold Harmless & Indemnity Policy."

The Werner defendants reply that any contractual indemnity obligation is to Lowe's as a customer and not end-user customers like the Fowlers. From this, the Werner defendants reason that they aren't directly liable to an end-user of a ladder purchased at a Lowe's store; they must simply indemnify Lowe's if it is found to be liable to an end-user. The Fowlers didn't have the opportunity to respond to this argument that was first raised in the reply. In

-8-

the end, the parties agree the Werner defendants have contractually agreed to indemnify the Lowe's defendants for product liability claims. They differ in opinion as to the legal consequences of this contractual obligation. The Fowlers claim the Werner defendants are directly liable to end-users of the product through their liability to Lowe's. In their reply, the Werner defendants claim they are directly liable to Lowe's and Lowe's alone. Indiana law appears to be well-settled that an injured party has no right of direct action against the tortfeasor's indemnitor, Central States Grain Co-operative v. Nashville Warehouse & Elevator Corp., 48 F.2d 138, 140 (7th Cir. 1931), so the bankruptcy court's order and the Lowe's Agreement don't give the Fowlers any right to sue the Werner defendants. At best (from the plaintiffs' perspective), the contract vests in the Werner defendants a duty to indemnify Lowe's for any damages Lowe's might be required (or agree through settlement) to pay.

The court reaches this conclusion hesitantly. Given the way the briefing unfolded in this case, the Fowlers haven't had a chance to disagree with the proposition that Indiana law gives no right of direct action against indemnitors. The principle appears — to the court — too well settled to demand additional investment of attorney time and party expense through further briefing or motion practice. But if the Fowlers disagree, and think there is a right of direct action in Indiana, the court will welcome a motion to reconsider.

Another word is in order concerning the briefing of this motion. After reading the Werner defendants' brief and turning to the Fowlers' opposing brief,

the court was surprised to learn the facts the Werner defendants omitted from their submission. Because it was left to the Fowlers to be the first to discuss the indemnification provision, they were left without a chance to respond to what the Werner defendants posited about the indemnification provision in their reply. Some of those challenges were ameliorated by oral argument, but the Werner defendants' cherry picking from the bankruptcy court's order and the Asset Purchase Agreement in their opening brief casts a long shadow over the Werner defendants' credibility with the court. As the court of appeals explained last month:

> We caution [movants] tempted to adopt this approach to summary judgment practice that it quickly destroys their credibility with the court.
>
> This approach to summary judgment is also both costly and wasteful. If a district court grants summary judgment in a party's favor based on its mischaracterizations of the record, the judgment will in all likelihood be appealed, overturned, and returned to the district court for settlement or trial. This course is much more expensive than simply pursuing a settlement or trying the case in the first instance. Further, the costs incurred while engaging in these shenanigans stand a real chance of being declared excessive under 28 U.S.C. § 1927, even if the abusive party prevails at trial on remand. Risking such pitfalls in the hope of avoiding a trial is a dramatic miscalculation of the risks and rewards of each approach.

Malin v. Hospira, Inc., No. 13-2433, 2014 WL 3896175, at *6 (7th Cir. Aug. 7, 2014).

### B. General Rule – Indiana

The Werner defendants further argue they can't be liable under Indiana law because when one corporation purchases the assets of another, the buyer

doesn't assume the debts and liabilities of the seller. Sorenson v. Allied Products Corp., 706 N.E.2d 1097, 1099 (Ind. Ct. App. 1999). There are several exceptions to this general rule, but the exceptions can only be invoked if the predecessor corporation no longer exists. Id.

The Werner defendants claim no exception can apply because the bankrupt predecessor entities still exist and they have provided the plaintiffs with the address for service of process and the contact information for the liquidating trustee's counsel. This argument isn't persuasive. The entities declared bankruptcy eight years ago and the sale of substantially all of their assets was completed seven years ago. For all intents and purposes, the bankrupt entities no longer exist. *See* Id. (exceptions only apply "when the predecessor corporation no longer exists, such as when a corporation dissolves or liquidates in bankruptcy"); *cf.* South Bend Lathe, Inc. v. Amsted Indus., Inc., 925 F.2d 1043, 1047 (7th Cir. 1991) (recovery under product-line exception theory barred because predecessor company remained a viable company capable of satisfying judgments against it).

An implied or express agreement between the buyer and the seller to assume the obligation is a recognized exception to the general rule that a buyer doesn't assume the seller's liabilities. Sorenson v. Allied Products Corp., 706 N.E.2d 1097, 1099 (Ind. Ct. App. 1999). Reiterating the arguments surrounding contractual liability, the parties dispute whether this exception applies to the Werner defendants. As previously discussed, the Werner

defendants expressly agreed to indemnify Lowe's for product liability claims – an obligation assumed when the Werner defendants purchased the assets of the bankrupt entities. But, that express agreement to indemnify Lowe's doesn't extend to the Fowlers.

The Fowlers alternatively argue that a "product-line exception" to the general rule could apply to the Werner defendants. In Guerroro v. Allison Engine Co., 725 N.E.2d 479 (Ind. Ct. App. 2000), the Indiana court of appeals discussed a product-line exception under which a party that acquired a manufacturing business and continued the output of the predecessor's line of products was strictly liable for defects in units of the same product line that was previously manufactured and distributed by the predecessor. Id. at 483. Indiana courts haven't adopted or disclaimed this exception. Id. at 487 ("The product line exception *may* be an appropriate means by which to balance the seemingly juxtaposed concepts of strict liability under the Indiana Product Liability Act, and freedom of contract – long supported by common law, as well as both state and federal constitutions."). The Fowlers effectively ask this federal court to push Indiana law to a place the Indiana courts haven't yet ventured. That's the role of the state court, not of a federal court sitting in diversity. *See* Doe v. City of Chicago, 360 F.3d 667, 672 (7th Cir. 2004) ("A litigant who wants an adventurous interpretation of state law should sue in state court . . . rather than ask us to declare such an interpretation to be the law of" Indiana).

The Werner defendants concede they contractually agreed to indemnify the Lowe's defendants, but that liability doesn't transfer to the Fowlers. The court declines to determine whether the product-line exception could apply in this situation because the exception has yet to be applied under Indiana law. No exception applies, so the Werner defendants are subject to the general rule; when they purchased the assets of the bankrupt company, they didn't assume its liabilities. It follows that the Werner defendants aren't liable under the Indiana Product Liability Act, common law theories of negligence, gross negligence, or recklessness (that, regardless, are subsumed by a Product Liability Act claim), the Indiana Consumer Protection Act, or a breach of a post-sale duty to warn theory (that the court found didn't exist under Indiana law in the co-defendants' dismissal order).

IV. CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment (Doc. No. 33) is GRANTED.

SO ORDERED.

ENTERED: September 18, 2014

/s/ Robert L. Miller, Jr.
Judge
United States District Court